JASMINE C. HITES, OSB #104056
TROUTMAN SANDERS LLP
100 SW Main, Suite 1000
Portland, OR  97204
Telephone: (503) 290-2344
jasmine.hites@troutman.com

TERRENCE R. McINNIS (*pro hac* application to be filed)
BINH DUONG T. PHAM (*pro hac* application to be filed)
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614
Telephone: (949) 622-2700
terrence.mcinnis@troutman.com
binh.pham@troutman.com

*Attorneys for Plaintiff*
U.S. Specialty Insurance Company


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT COURT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation,<br><br>                Plaintiff,<br><br>v.<br><br>ELCON ASSOCIATES, INC., an Oregon corporation, and FLUOR/HDR GLOBAL DESIGN CONSULTANTS, LLC, a Delaware limited liability company,<br><br>                Defendants. | No. 3:17-cv-1658<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff U.S. Specialty Insurance Company ("USSIC"), by its counsel, files this Complaint against Defendants Elcon Associates, Inc. ("Elcon") and Fluor/HDR Global Design Consultants, LLC ("FHDR").   For and in support of its causes of action, USSIC, upon knowledge, information and belief, alleges as follows:

## <u>INTRODUCTION</u>

1.      USSIC brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, seeking a judicial determination regarding its rights and obligations, if any, under USSIC's Policy No. USS 15 25806 issued to Elcon for the May 6, 2015 to May 6, 2016 Policy Period (the "Policy") in connection with FHDR's third-party claims against Elcon in the action entitled *Denver Transit Constructors v. Fluor/HDR Global Design Consultants*, LLC, No. 2016CV30742 (Dist. Ct., Denver County, Colo.) (the "*DTC* Action").

2.      USSIC seeks a judgment declaring that the Policy does not provide coverage for FHDR's third-party claims against Elcon in the *DTC* Action because Elcon was aware of the circumstances, situation or dispute giving rise to those claims before the Policy's May 6, 2014 Knowledge Date, and that USSIC is entitled to recoup from Elcon amounts USSIC paid under the Policy for which coverage is not afforded.   In the alternative, USSIC seeks a judgment declaring that any coverage for FHDR's third-party claims against Elcon in the *DTC* Action are subject to a $1 million Limit of Liability pursuant to the Policy's Retroactive Date Amendment Endorsement.

## THE PARTIES

3.      Plaintiff USSIC is an insurance company duly organized and existing under the laws of the state of Texas, with its principal place of business in Texas.  USSIC is not a citizen of Oregon or Delaware within the meaning of 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c)(1).

4.      Upon information and belief, defendant Elcon is an Oregon corporation with its principal place of business in Portland, Oregon.  Accordingly, Elcon is a citizen of the state of Oregon within the meaning of 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c)(1).

5.      Upon information and belief, defendant FHDR is a Delaware corporation with its principal place of business in Delaware.  Accordingly, FHDR is a citizen of the state of Delaware within the meaning of 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff, on the one hand, and all Defendants, on the other hand, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the Policy that is the subject of this action was issued in Oregon and defendant Elcon, the Named Insured under the Policy, is an Oregon corporation.

## FACTUAL ALLEGATIONS

A.      **The Policy**

8.      USSIC issued Architects, Engineers, Surveyors, Consultants & Construction Managers Professional Liability Insurance Policy No. USS 15 25806 to Elcon for the May 6,

COMPLAINT FOR DECLARATORY RELIEF

2015 to May 6, 2016 Policy Period. (Policy Declarations, Items 1, 4 and 5). A true and correct

copy of the Policy (not including the Applicaton) is attached hereto as Exhibit 1.

9.      The Policy contains three Insuring Agreements, Sections I.(A), I.(B) and I.(C)

(as amended by Endorsement No. 2), of which only Insuring Agreement (A) is potentially

relevant here.

10.      Insuring Agreement (A) of the Policy provides:

> **(A)**    **Professional Services Liability Coverage**
>
> The Company shall pay **Loss** and **Claim Expenses,** in
> excess of the Deductible and subject always to this Policy's
> Limit of Liability, that an **Insured** shall become legally
> obligated to pay as a result of a **Claim** made against an
> **Insured** for a **Wrongful Act** arising from **Professional
> Services,** provided always that: (1) the **Claim** is first made
> against an **Insured** during the **Policy Period** or an Optional
> Extended Reporting Period (if applicable) and reported to
> the Company in writing during the **Policy Period,** within
> sixty (60) days after the end of the **Policy Period** or during
> an Optional Extended Reporting Period (if applicable); (2)
> an **Insured's** partners, principals, officers, directors,
> members or insurance managers had no knowledge of any
> circumstance, dispute, situation or incident that gave rise to
> such **Claim** or could reasonably have been expected to
> give rise to such **Claim** prior to the Knowledge Date stated
> in the Declarations of this Policy; and (3) the **Wrongful
> Act** takes place on or after the Retroactive Date stated in
> the Declarations of this Policy and prior to end of the
> **Policy Period.**

11.      It is a precondition to coverage under Insuring Agreement (A) that the Insured's

partners, principals, officers and/or directors "had no knowledge of any circumstance, dispute,

situation or incident that gave rise to such  **Claim** or could reasonably have been expected to

give rise to such **Claim** prior to the Knowledge Date stated in the Declarations of this Policy."

(the "Prior Knowledge Date Condition").

– 4 –
COMPLAINT FOR DECLARATORY RELIEF

12.     The Knowledge Date stated in the Declarations of the Policy is May 6, 2014.

13.     **Claim** is defined in Section IV.(C) of the Policy to mean:

(1)    a demand made against any **Insured** for monetary damages or services; or

(2)    any civil, judicial, administrative, regulatory or arbitration proceeding commenced by the service of a complaint or similar pleading and initiated against any **Insured**.

A **Claim** will be deemed to have been first made against an **Insured** when any **Insured** first receives notice of such **Claim**.

13.     The Policy contains a Limit of Liability of $5 million for each Claim (including Loss and Claim Expenses) and in the aggregate, subject to a $50,000 Deductible for each Claim (including Loss and Claim Expenses).   (Exhibit 1, Policy Declarations, Items 6, 8 and 9). However, both the Limits of Liability and Retroactive Date are amended by Endorsement No. 3 (the "Retroactive Date Amendment Endorsement") which provides, in relevant, that:

In consideration of the premium charged, it is hereby understood and agreed that the Retroactive Date stated in the Declarations of this Policy is amended as follows:

The Retroactive Date of 12/01/1978 applies only to a Limit of Liability of $1,000,000/$2,000,000.  That portion of the Limit of Liability in excess of $1,000,000/$2,000,000 shall have a Retroactive Date of 05/06/2014.

**B.     The Claim Against Elcon**

14.     The *DTC* Action arises out of the design and construction of the Eagle P3 commuter rail in Denver, Colorado (the "Eagle Project" or the "Project").

15.     FHDR and Elcon entered into a Teaming Agreement on June 9, 2008, which was later amended on January 29, 2009 (collectively, the "Teaming Agreement").  FHDR and

Elcon also executed several Task Orders in connection with the Teaming Agreement, including Task Order No. 13.

16.    Pursuant to the Teaming Agreement and Task Order No. 13, Elcon was tasked with the preliminary design of the Overhead Contact Systems ("OCS") poles, which are the structural steel poles from which the electrical wires and other components hang for the purpose of powering the train cars.  Further, as set forth in Task Order No. 13, Elcon was required to design the OCS "in sufficient detail to quantify the construction work required" and determine typical details for the OCS poles and foundations "for cost estimating purposes."

17.    The Teaming Agreement contained an indemnification provision which states that, "Each Party shall indemnify and defend the other from any and all claims, damages, losses or expenses, including court costs and attorney's fees, arising out of or resulting from a breach of this Agreement or any negligent acts, errors or omissions for which they are legally liable."

18.    In 2010, DTC was ultimately awarded the contract to perform work on the Project based on the fixed-price cost proposal it submitted, which relied in part on cost estimates provided by FHDR and Elcon, including Elcon's cost estimations for the OCS Poles.

19.    On September 1, 2010, DTC entered into a Design Contract with FHDR for certain design and other related services associated with the Project.  Once that agreement was executed, FHDR executed subcontracts with its subconsultants, including Elcon.

20.    During the course of the post-contract design and construction phase of the Project, DTC allegedly discovered that the information and design parameters provided by Elcon during the bidding/proposal phase regarding the sizes and height of the OCS Poles were significantly underestimated, resulting in a substantial price difference between the proposal and final design and construction of the OCS Poles.

COMPLAINT FOR DECLARATORY RELIEF

21.    On March 14, 2014, DTC sent FHDR a letter alleging that FHDR failed to meet the standard of care for providing professional services in connection with "certain proposal and execution related services" and demanding "repayment of costs incurred as a result of these errors and/or omissions" (the "DTC Demand Letter"). The DTC Demand Letter enumerated several alleged deficiencies "in support of DTC's proposal," which included an item called "Design of OCS Poles" with a cost estimate of $3,500,000.

22.    On April 25, 2014, Ken Smith, Project Principal at FHDR, sent Kinh Pham, Principal at Elcon, a letter designated as a "Potential Claim Notification," informing Elcon of a "potential claim" that "may involve design services" provided by Elcon, including with regards to its "OCS Pole Design." The letter indicated that any payments associated with these tasks may be delayed or omitted until these issues were resolved (the "April 25, 2014 Letter"). The April 25, 2014 Letter had a date stamp confirming that it was received by "Elcon – Portland" no later than May 5, 2014. A true and correct copy of the April 25, 2014 Letter with its enclosures is attached hereto as Exhibit 2.

23.    The April 25, 2014 Letter enclosed a copy of the DTC Demand Letter (attached thereto as Appendix A). The April 25, 2014 Letter also enclosed a chart providing a "DTC-F/HDR Design Issues Analysis" (attached thereto as Appendix B), which identified the OCS Pole Design issue as follows: "During the proposal, F/HDR provided OCS pole design recommendations that were one third the size of the current design."

24.    On March 3, 2016, DTC filed the *DTC* Action against FHDR, alleging that FHDR committed errors in the design and construction of the Project.

25.    On November 9, 2016, FHDR filed a Third-Party Complaint in the *DTC* Action against Elcon (and other subconsultants) for breach of contract, indemnification, and common

law indemnity/contribution.  A true and correct copy of the Third-Party Complaint (approved and deemed filed by the court in the *DTC* Action on November 9, 2016) is attached hereto as Exhibit 3.

26.  In the Third-Party Complaint, FHDR alleged that "Elcon's work forms the basis of DTC's Legacy Claim #1 (OCS Poles)."  (Exhibit 3, Third-Party Complaint, at ¶ 20).   DTC's claim against FHDR regarding the alleged deficiencies with the design of the OCS Poles during the bidding/proposal phase, as described in the April 25, 2014 Letter, were known as "Legacy Claim #1" or "Legacy Claim L1."

27.  In FHDR's Disclosure of Expert Witnesses dated April 24, 2017, FHDR summarized the "Legacy Claim L1 – Design of OCS Poles" claim as follows:  "DTC alleged the professional services performed during the proposal phase significantly underestimated the size of OCS poles due to the breach of the standard of care."

28.  Elcon filed a motion for summary judgment in the *DTC* Action, and on July 28, 2017, FHDR filed an opposition brief wherein it summarized its claim against Elcon as follows:

> After the Sub-Consultant Agreement was in place and while the Project was ongoing, DTC asserted a claim against FHDR alleging the sizes and height of the OCS Poles were significantly underestimated. … (DTC's March 14, 2014 Claim).  Specifically, between the proposal and final design, the total weight of the OCS poles designed by Elcon increased by 174%.  This claim became known as Legacy Claim L1.

> On April 25, 2014, FHDR tendered Legacy Claim L1 to Elcon. Elcon denied liability and refused to honor its contractual and indemnity obligations to FHDR.  The parties were unable to resolve DTC's claims, including those related to Elcon's work, at this stage.

> As a result of its unresolved claims, DTC filed suit against FHDR seeking to recover $65,790,101 in damages [the *DTC* action].  DTC's claims against FHDR related to Elcon's services totaled

– 8 –
COMPLAINT FOR DECLARATORY RELIEF

> $4,960,931.  FHDR, in turn, filed a third-party complaint against
> Elcon (and other sub-consultants) for breach of contract, indemnity
> and contribution. [Citations to evidence omitted.]

29.    Eventually, DTC and FHDR proceeded to mediation and settled all claims between them, including those related to Elcon's OCS pole design.  Separately, FHDR settled with all subcontractors except for Elcon, which as of the date of filing of this complaint are still being litigated in the *DTC* Action.

30.    FHDR seeks more than $3 million in damages from Elcon in the *DTC* Action.

**C.    USSIC's Defense Under a Reservation of Rights**

31.    Elcon first provided notice to USSIC of its dispute with FHDR on or about November 10, 2015, during the Policy Period of the Policy.

32.    By letter dated December 1, 2015 letter, USSIC agreed to defend Elcon subject to a full and complete reservation of all of its rights under the Policy and at law, including but not limited to the right to deny indemnity and withdraw from the defense of any Insured "for any **Wrongful Act** of which [Elcon] w[as] aware prior to the Knowledge Date on the Policy" pursuant to the applicable Insuring Agreement of the Policy (Policy Section I.(A)).  USSIC also explained that "[p]ursuant to Endorsement No. 3, the Limit of Liability in excess of $1 million per Claim and $2 million in the aggregate shall have a Retroactive Date of May 6, 2014[.]"  A true and correct copy of the December 1, 2015 letter is attached hereto as Exhibit 4.

33.    In the December 1, 2015 letter, USSIC reserved its "right to withdraw from the defense and seek reimbursement of defense costs in the event it is later established that coverage is not afforded under the Policy and that USSIC has no duty to defend."

34.    USSIC continued to defend Elcon after FHDR filed its Third-Party Complaint against Elcon in the *DTC* Action on November 9, 2016.

**D.      The Present Coverage Dispute**

35.      As the litigation in the *DTC* Action continued, it became increasingly clear that FHDR's claim against Elcon was based solely on the circumstances, situations or disputes first identified in the April 25, 2014 Letter, and that the conduct at issue in this matter related solely to the design of the OCS Poles used for DTC's proposal for the Project performed by Elcon years before the May 6, 2014 Retroactive Date.

36.      On September 25, 2017, USSIC advised Elcon, among other things, that: (1) no coverage was afforded for FHDR's claims against Elcon in the *DTC* Action because the Insuring Agreement was not triggered pursuant to the Prior Knowledge Date Condition; and (2) even if coverage were afforded, the matter would be subject to a $1 million Limit of Liability pursuant to the Policy's Retroactive Date Amendment Endorsement.

37.      Elcon has disputed USSIC's right to deny coverage for FHDR's claims against Elcon in the *DTC* Action, or to apply the $1 million Limit of Liability under the Policy's Retroactive Date Amendment Endorsement.  A judicial declaration of the parties' respective rights and obligations under the Policy is appropriate under the circumstance, and no other adequate remedy is available to USSIC.

### COUNT I

### (Declaratory Relief Against Elcon and FHDR:

### Prior Knowledge Date Condition)

38.      USSIC incorporates paragraphs 1 through 37 as if fully set forth herein.

39.      The Policy's Insuring Agreement in Section I.(A) provides in relevant part that:

> [USSIC] shall pay **Loss** and **Claim Expenses,** in excess of the
> Deductible and subject always to this Policy's Limit of Liability,
> that an **Insured** shall become legally obligated to pay as a result of

a **Claim** made against an **Insured** for a **Wrongful Act** arising from **Professional Services,** provided always that . . . (2) an **Insured's** partners, principals, officers, directors, members or insurance managers had no knowledge of any circumstance, dispute, situation or incident that gave rise to such **Claim** or could reasonably have been expected to give rise to such **Claim** prior to the Knowledge Date stated in the Declarations of this Policy . . . .

40.     One or more of Elcon's partners, principals, officers, directors, members or insurance managers – including Kinh Pham, a principal of Elcon – was aware of the circumstance, dispute, situation or incident that gave rise to FHDR's Third-Party Complaint against Elcon in the *DTC* Action before the Policy's May 6, 2014 Knowledge Date.

41.     Because Elcon was aware of the circumstance, dispute, situation or incident that gave rise to FHDR's Third-Party Complaint against Elcon in the *DTC* Action before the May 6, 2014 Knowledge Date, coverage under the Policy's Insuring Agreement in Section I.(A) is not triggered for that matter, and so USSIC has no obligation to defend or indemnify Elcon against FHDR's Third-Party Complaint.

42.     A dispute exists between the parties over whether, by reason of the Policy's Prior Knowledge Date Condition, coverage is afforded to Elcon for FHDR's Third-Party Complaint in the *DTC* Action.  An actual and justiciable controversy exists between the parties in this regard.

43.     Accordingly, USSIC is entitled to a judicial declaration that, because Elcon failed to satisfy the Prior Knowledge Date Condition, the Policy does not afford coverage for FHDR's claims against Elcon in the *DTC* Action, and that USSIC does not have, and never had, a duty to defend or indemnify Elcon for this matter.

**COUNT II**

**(Declaratory Relief Against Elcon and FHDR:**

**Retroactive Date Amendment Endorsement)**

44.    USSIC incorporates paragraphs 1 through 43 as if fully set forth herein.

45.    While USSIC contends that coverage is not afforded under the Policy for FHDR's claims against Elcon in the *DTC* Action, in the alternative, USSIC seeks a declaration confirming that the Limit of Liability applicable to FHDR's claims against Elcon in the *DTC* Action is $1 million.

46.    The Policy's Insuring Agreement in Section I.(A) provides in relevant part that:

> [USSIC] shall pay **Loss** and **Claim Expenses,** in excess of the Deductible and subject always to this Policy's Limit of Liability, that an **Insured** shall become legally obligated to pay as a result of a **Claim** made against an **Insured** for a **Wrongful Act** arising from **Professional Services,** provided always that . . . (3) the **Wrongful Act** takes place on or after the Retroactive Date stated in the Declarations of this Policy and prior to end of the **Policy Period.**

47.    Endorsement No. 3 of the Policy (the Retroactive Date Amendment Endorsement) provides that "the Retroactive Date of 12/01/1978 applies only to a Limit of Liability of $1,000,000/$2,000,000.  That portion of the Limit of Liability in excess of $1,000,000/$2,000,000 shall have a Retroactive Date of 05/06/2014."

48.    Thus, although the Policy contains a $5 million Limit of Liability, pursuant to the Retroactive Date Amendment Endorsement, the portion of that Limit in excess of $1 million per Claim and $2 million in the aggregate is subject to a May 6, 2014 Retroactive Date. Therefore, for Claims arising from Wrongful Acts taking place before May 6, 2014, the applicable Limit of Liability is $1 million.

COMPLAINT FOR DECLARATORY RELIEF

49.     The Wrongful Acts giving rise to FHDR's claims against Elcon in the *DTC* Action occurred before May 6, 2014.  Indeed, the alleged errors in Elcon's work were described in the April 25, 2014 Letter (the DTC Legacy Claim #1), which itself pre-dates the May 6, 2014 Retroactive Date for Limits above $1 million.

50.     Because the Wrongful Acts at issue in FHDR's claims against Elcon in the *DTC* Action pre-date the Retroactive Date for that portion of the Limits in excess of $1 million per Claim, to the extent any coverage is afforded under the Policy for this matter, the applicable Limit is $1 million, not $5 million.

51.     A dispute exists between the parties over the Limit applicable to this matter.  An actual and justiciable controversy exists between the parties in this regard.

52.     Accordingly, USSIC is entitled to a judicial declaration that, to the extent any coverage is afforded under the Policy for FHDR's claims against Elcon in the *DTC* Action, the applicable Limit of Liability is $1 million pursuant to the Policy's Retroactive Date Amendment Endorsement.

## COUNT III

### (Recoupment as to Elcon)

53.     USSIC incorporates paragraphs 1 through 52 as if fully set forth herein.

54.     USSIC provided Elcon with a defense in the *DTC* Action, subject to a complete reservation of rights, and has paid Elcon's defense costs under the Policy, in excess of the applicable retention.  Elcon has also demanded that USSIC fund a settlement of FHDR's claims against it in the *DTC* Action, although no settlement has as yet been reached or funded.

55.     In the December 1, 2015 letter, USSIC agreed to defend Elcon subject to a full and complete reservation of all of its rights under the Policy and at law, including, but not

– 13 –
COMPLAINT FOR DECLARATORY RELIEF

limited to, the right to deny indemnity and withdraw from the defense of any Insured "for any **Wrongful Act** of which [Elcon] w[as] aware prior to the Knowledge Date on the Policy" pursuant to the applicable Insuring Agreement of the Policy (Policy Section I.(A)).  USSIC also explained that "[p]ursuant to Endorsement No. 3, the Limit of Liability in excess of $1 million per Claim and $2 million in the aggregate shall have a Retroactive Date of May 6, 2014[.]"

56.     In the December 1, 2015 letter, USSIC reserved its "right to withdraw from the defense and seek reimbursement of defense costs in the event it is later established that coverage is not afforded under the Policy and that USSIC has no duty to defend."

57.     USSIC continued to defend Elcon after FHDR filed its Third-Party Complaint against Elcon in the *DTC* Action on November 9, 2016.

58.     No coverage is afforded to Elcon for FHDR's claims in the *DTC* Action or otherwise arising out of the circumstances, incidents, or situations identified in the April 25, 2014 Letter, by reason of the Prior Knowledge Date Condition.  Accordingly, any amounts paid by USSIC under the Policy in defense, settlement, or in satisfaction of any judgment that may be entered against Elcon, are not and were not owed by USSIC under the Policy.   It would be unjust and inequitable to allow Elcon to keep the benefit of amounts paid under the Policy for which it did not contract and for which it was not entitled, and so USSIC is entitled as a matter of law and equity to recoup its payments under the Policy from Elcon.

59.     A dispute exists between USSIC and Elcon over USSIC's entitlement to recoup amounts paid under the Policy.  An actual and justiciable controversy exists between the parties in this regard.

60.     Because the Policy does not provide coverage for Elcon in connection with FHDR's third-party claims in the *DTC* Action, USSIC is entitled to a judgment that it recoup

COMPLAINT FOR DECLARATORY RELIEF

from Elcon all amounts paid under the Policy in connection with FHDR's claims in the *DTC* Action or otherwise arising out of the circumstances, incidents, or situations identified in the April 25, 2014 Letter.

## PRAYER FOR RELIEF

WHEREFORE, USSIC prays for the following and for judgment against the defendants as follows:

## COUNT I

A.      A judicial declaration that, because Elcon failed to satisfy the Prior Knowledge Date Condition, the Policy does not afford coverage for FHDR's claims against Elcon in the *DTC* Action, and that USSIC does not have, and never had, a duty to defend or indemnify Elcon for this matter.

## COUNT II

B.      A judgment declaring that, to the extent any coverage is afforded under the Policy for FHDR's claims against Elcon in the *DTC* Action, the applicable Limit of Liability is $1 million pursuant to the Policy's Retroactive Date Amendment Endorsement.

## COUNT III

C.      A judgment that USSIC recoup from Elcon all amounts paid under the Policy in connection with FHDR's claims in the *DTC* Action or otherwise arising out of the circumstances, incidents, or situations identified in the April 25, 2014 Letter.

COMPLAINT FOR DECLARATORY RELIEF

## AS TO ALL COUNTS

D.      An award of costs of suit and such additional declaratory and other relief as shall

be found to be appropriate under the circumstances.

DATED:  October 18, 2017          Respectfully submitted,

TROUTMAN SANDERS LLP


*/s/ Jasmine C. Hites*
JASMINE C. HITES, OSB #104056
TERRENCE R. McINNIS
BINH DUONG T. PHAM

Attorneys for Plaintiff
U.S. Specialty Insurance Company