IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation,<br><br>      Plaintiff,<br><br>v.<br><br>ELCON ASSOCIATES, INC., an Oregon corporation<br><br>      Defendant. | 3:17-cv-01658-BR<br><br>OPINION AND ORDER |

**JASMINE C. HITES**
Troutman Sanders, LLP
100 S.W. Main St.
Suite 1000
Portland, OR 97204
(503) 290-2344

**TERRENCE R. MCINNIS**
**BINH DUONG T. PHAM**
Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92714
(949) 622-2705

      Attorneys for Plaintiff

**GREGORY L. BAIRD**
Gordon & Polscer, LLC
9755 S.W. Barnes Road
Suite 650
Portland, OR 97225
(503) 242-2922

**PETER J. MORGAN**
Morgan Rider Riter Tsai, P.C.
1512 Larimer Street
Suite 450
Denver, CO 80202
(303) 623-1839

>    Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Plaintiff U.S. Specialty Insurance Company's Request (#45) for Judicial Notice and Defendant Elcon Associates's Motion (#42) to Dismiss Pursuant to the Federal Declaratory Judgment Act. The Court has reviewed the record on these Motions and concludes it is sufficiently developed such that oral argument would not be helpful. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Request for Judicial Notice and **DENIES** Elcon's Motion to Dismiss.

## BACKGROUND

The following facts are taken from the Amended Complaint and the parties' materials related to Defendant's Motion to Dismiss.

## I. The Construction Dispute

Defendant Fluor/HDR Global Design Consultant's (F/HDR) is a limited liability company with two shareholders: Fluor Corporation and HDR Engineering, Inc. F/HDR is incorporated in Delaware, and its principal place of business is Greenville, South Carolina. F/HDR was established for the purpose of pursuing and delivering transportation "design-build projects [in North America] with anticipated construction values in excess of $500 million." In 2009 F/HDR developed a "specific and unique Business Plan . . . addressing how [it] intended to get awarded" those kinds of projects. Second Aff. of Bruce Gerhardt at ¶ 2.

On June 9, 2008, F/HDR and Defendant Elcon Associates, Inc., "entered into a Teaming Agreement, . . . which was amended on January 29, 2009." Am. Compl. at ¶ 16. The Teaming Agreement related to the design and construction of the Eagle P3 commuter rail in Denver, Colorado (the Eagle Project). The Teaming Agreement and Task Order No. 13 "tasked" Elcon with "preliminary design of the Overhead Contact Systems (OCS) poles." Am. Compl. at ¶ 17. Elcon was also "required to design the OCS in sufficient detail to quantify the construction work required and [to] determine typical details for the OCS poles and foundations for cost estimating purposes." *Id*. (quotation omitted).

At some point in 2010 Denver Transit Constructors (DTC) was awarded the contract to perform work on the Eagle Project "based

on the . . . cost proposal [it submitted] that relied in part on the information provded by F/HDR and Elcon, including Elcon's design parameters for the OCS poles prepared for cost estimating purposes." Am. Compl. at ¶20.

On September 1, 2010, DTC entered into a design contract with F/HDR for the "final design and construction on the [Eagle] Project. Once that agreement was executed, [F/HDR] executed subcontracts with its subconsultants, including Elcon." Am. Compl. at ¶ 21.

At some point DTC "discovered . . . the information and design parameters Elcon provided during the Proposal Phase regarding the sizes and height of the OCS poles were significantly underestimated, resulting in a substantial price difference between the proposal and final design and construction of the OCS poles (the 'OCS Pole Allocation Design Dispute')." Am. Compl. at ¶ 22.

In February 2014 DTC and FHDR agreed the OCS Pole Allocation Design Dispute "remain[ed] open and should be submitted as an [errors & omissions] claim under a professional liability insurance policy. DTC agreed to provide a formal notice to [F/HDR] of the remaining potential errors & omissions claims that had not been resolved, including the OCS Pole Allocation Design Dispute." Am. Compl. at ¶ 26 (quotation omitted).

On March 14, 2014, DTC sent F/HDR a letter in which it

asserted F/HDR failed to meet the standard of care for providing professional services in connection with "certain proposal and execution related services" and demanded "repayment of costs incurred as a result of these errors and/or omissions" (the DTC Demand Letter). The DTC Demand Letter set out several alleged deficiencies "in support of DTC's proposal," including the "Design of OCS Poles." Am. Compl. at ¶ 27.

## II. The Insurance Dispute

Before May 2014 Elcon had been insured by Plaintiff "under successive professional liability policies . . . with limits of $1 million per **Claim**." Am. Compl. at ¶ 32 (emphasis in original).

On April 2, 2014, Elcon submitted a "renewal application for the May 6, 2014 to May 6, 2015 policy year with [Plaintiff] seeking limits of liability of $1 million per **Claim**." Am. Compl. at ¶ 33 (emphasis in original).

On April 28, 2014, Elcon requested Plaintiff to increase the limits of liability from $1 million per claim to $5 million per claim. Plaintiff agreed to increase the liability limits.

In 2015 Plaintiff issued Policy No. USS 15 25806 to Elcon for the period of May 6, 2015, to May 6, 2016. The Policy provided in relevant part:

> The Company shall pay **Loss** and **Claim Expenses**
> . . . that an **Insured** shall become legally
> obligated to pay as a result of a **Claim** made

5 – OPINION AND ORDER

>            against an **Insured** for a **Wrongful Act** arising from
>            **Professional Services**, provided always that:
>            (1) the Claim is first made against an **Insured**
>            during the **Policy Period** . . . ; [and] (2) an
>            **Insured's** partners, principals, officers,
>            directors, members or insurance managers had no
>            knowledge of any circumstance, dispute, situation
>            or incident that gave rise to such **Claim** or could
>            reasonably have been expected to give rise to such
>            **Claim** prior to the Knowledge Date [of May 6,
>            2014].

Am. Compl., Ex. 1 at 1(A)(emphasis in original). The policy also contained a Limit of Liability of $5 million "for each Claim . . . and in the aggregate." Am. Compl. at ¶ 13. The Limit of Liability, however, also contained an endorsement amending coverage as follows: "That portion of the Limit of Liability in excess of $1,000,000/$2,000,000 shall have a Retroactive Date of 05/06/2014." Am. Compl., Ex. 1 at 26.

On November 10, 2015, Elcon "first provided notice to [Plaintiff] of its dispute with [F/HDR]." Am. Compl. at ¶ 50.

On December 1, 2015, Plaintiff agreed to defend Elcon in its dispute with DTC subject to "complete reservation of rights." Am. Compl., Ex. 4 at 1. Specifically, Plaintiff noted the Policy

>            requires that the Insured have no knowledge of the
>            Wrongful Act prior to the Knowledge Date[,] . . .
>            May 6, 2014. Accordingly, [Plaintiff reserved]
>            all rights under the Policy . . ., including, but
>            not limited to, the right to deny indemnity and
>            withdraw from the defense of any Insured for any
>            **Wrongful Act** of which you were aware prior to the
>            Knowledge Date [of May 6, 2014].

Am. Compl., Ex. 4 at 3 (emphasis in original).

## III. The Underlying Action

On March 3, 2016, DTC filed a breach-of-contract action in Colorado state court against F/HDR alleging F/HDR "committed errors in the design and construction of the [Eagle] Project." Am. Compl. at ¶ 43.

On November 9, 2016, F/HDR filed a third-party complaint against Elcon and other subconsultants in the Colorado state-court action asserting claims for breach of contract and indemnification.

> Plaintiff alleges:
>
>> As the litigation in the [Colorado state court] continued, it became increasingly clear that [F/HDR's] third-party claims against Elcon were based solely on the circumstances, situations or disputes first identified in the April 25, 2014 Letter, and that the conduct at issue in [the Colorado state court matter] related solely to the alleged deficiencies with the preliminary design and/or specifications of the OCS Poles . . . [completed] by Elcon years before the May 6, 2014 Retroactive Date.

Am. Compl. at ¶ 54. Accordingly, on September 25, 2017, Plaintiff advised Elcon that

> no coverage was afforded for [F/HDR's] third-party claims against Elcon in the [Colorado state-court action] because the [Policy] was not triggered pursuant to the Prior Knowledge Date Condition and, even if coverage were afforded, the matter would be subject to a $1 million Limit of Liability pursuant to the Policy's Retroactive Date Amendment Endorsement.

Am. Compl. at ¶ 55.

At some point DTC and F/HDR mediated and settled all claims

7 - OPINION AND ORDER

between them in the Colorado state-court action, including claims related to Elcon's OCS Pole design. F/HDR separately settled with all subconsultants except Elcon. The Colorado state-court action is still proceeding as to F/HDR and Elcon.

On October 18, 2017, Plaintiff filed a Declaratory Judgment action in this Court against F/HDR and Elcon in which Plaintiff sought a judicial determination of its rights and obligations under the Policy. Specifically, Plaintiff sought (1) a declaration that "the Policy does not afford coverage for [F/HDR's] claims against Elcon in the [Colorado state-court action], and that [Plaintiff] does not have, and never had, a duty to defend or indemnify Elcon" in the Colorado action "because Elcon failed to satisfy the Prior Knowledge Date Condition"; (2) a declaration that "the extent any coverage is afforded under the Policy for [F/HDR's] claims against Elcon in the [Colorado state-court action], the applicable Limit of Liability is $1 million pursuant to the Policy's Retroactive Date Amendment Endorsement"; and (3) recoupment from Elcon all of the amounts paid under the Policy in connection with [F/HDR's] claims in the [Colorado state-court action] that occurred after the prior-knowledge date of May 6, 2014.

On November 22, 2017, F/HDR filed a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2).

On December 7, 2017, Elcon filed a Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6) & (7) or, in the Alternative, Motion to Stay Proceedings.

On February 7, 2018, F/HDR, Elcon, and Plaintiff entered into a settlement agreement in which they agreed, among other things, that Plaintiff would pay $625,000 to F/HDR under the Policy on behalf of Elcon in settlement of F/HDR's claims against Elcon and subject to Plaintiff's full reservation of rights. Plaintiff retained the right to recover from Elcon the settlement payment and defense costs paid under the Policy.

On February 7, 2018, Plaintiff also filed a Notice of Voluntary Dismissal of F/HDR from this action.

On February 14, 2018, the Colorado state court dismissed all claims between Elcon and F/HDR and granted Elcon leave to file a third-party complaint against Plaintiff and Zurich American Insurance Company[1] in that court. In its third-party complaint Elcon brought claims against Plaintiff for breach of contract and bad faith in connection with Plaintiff's handling of F/HDR's claim against Elcon in the Colorado state-court action and claims against Zurich for the breach of its obligations to Elcon under a different insurance policy.

On February 14, 2018, this Court entered an Order Dismissing F/HDR from this action. This Court also entered an Order denying as moot Elcon's Motion to Dismiss and granting Plaintiff leave to

---

[1] Zurich is not a party to the action pending in this Court.

9 - OPINION AND ORDER

file an Amended Complaint.

On February 28, 2018, Plaintiff filed in this Court a First Amended Complaint against Elcon in which Plaintiff brings three claims for declaratory judgment, a claim for "recoupment/restitution/unjust enrichment," and a claim for "tortious misrepresentation/concealment of material fact."  Plaintiff seeks various declarations of its rights, restitution, "other appropriate equitable relief," and compensatory damages in excess of $900,000.  This Court has diversity jurisdiction.

On March 6, 2018, Elcon filed a Motion to Dismiss Pursuant to the Federal Declaratory Judgment Act.

On March 16, 2018, Plaintiff and Zurich removed the Colorado state-court action to the United States District Court for the District of Colorado.

On March 20, 2018, Plaintiff filed its Response to Elcon's Motion to Dismiss and a Request for Judicial Notice.

The Court took the parties' Motions under advisement on April 3, 2018.

## PLAINTIFF'S REQUEST (#45) FOR JUDICIAL NOTICE

Plaintiff requests the Court to take judicial notice of (1) the February 14, 2018, order of dismissal with prejudice of all claims between Elcon and F/HDR in the Colorado state-court action; (2) the February 14, 2018, order by the Colorado state

court granting Elcon's motion for leave to file a third-party complaint against Zurich in that action; and (3) the March 16, 2018, Notice of Removal of the Colorado state-court action to the United States District Court for the District of Colorado.

**I.   Standards**

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The court may take judicial notice of documents that are matters of public record.  See *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)(A district court may take "judicial notice of matters of public record outside the pleadings" when determining whether a complaint fails to state a claim.).

**II.  Analysis**

Elcon opposes Plaintiff's request for the Court to take judicial notice to the extent that Plaintiff seeks to rely on the truth of the facts contained in the documents rather than the mere existence of the documents themselves.

The Ninth Circuit has made clear that "[o]n a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)(quotation

omitted). This Court, therefore, may take judicial notice of the existence of the Colorado state-court's orders and the notice of removal, but it may not take judicial notice of the facts recited in those documents for the truth of those facts.

Accordingly, the Court grants Plaintiff's Request for Judicial Notice to the extent that the Court takes notice that the Colorado state-court issued the February 14, 2018, orders and Elcon and Zurich removed the Colorado state-court matter to federal court. The Court, however, denies Plaintiff's request to the extent that Plaintiff asks the Court to take notice of the truth of the facts recited in the orders or in the notice of removal.

## ELCON'S MOTION (#42) TO DISMISS PURSUANT TO THE FEDERAL DECLARATORY JUDGMENT ACT

Elcon asserts the Court should exercise its discretion under the Federal Declaratory Judgment Act to decline jurisdiction over this case pursuant to *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), in light of the parallel Colorado action that "addresses identical coverage issues raised in this case."

Plaintiff opposes dismissal of this action on the ground that *Brillhart* is inapplicable because there is not any parallel state-court proceeding and it would be an abuse of discretion for this Court to abstain from deciding this matter.

**I.   Declaratory Judgment Standards**

The Declaratory Judgment Act provides:  "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  *See also R.R. Street & Co. Inc. v. Transport Ins. Co.,* 656 F.3d 966, 975 (9th Cir. 2011)(same).  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287 (quotation omitted). "When all is said and done, we have concluded, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id*. (quotation omitted).  Thus, the exercise of jurisdiction under the Declaratory Judgment Act is at the discretion of the district court. *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).  *See also Winstead v. State Farm Mut. Automobile Ins. Co.*, 669 F. App'x 910, 910 (9th Cir. 2016)(same).  "Even if the district court has subject matter

jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). "[A] District Court[, however,] cannot decline to entertain such an action as a matter of whim or personal disinclination." *Id*. at 803. When determining whether to retain jurisdiction in a properly filed declaratory-judgment action, the court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.*

In *Wilton* the Supreme Court held *Brillhart* governs the propriety of a district court's decision to stay a declaratory-judgment action. 515 U.S. at 289-90. In *Brillhart* the Supreme Court concluded a federal court sitting in diversity and presiding over an action for declaratory relief may exercise its discretion to dismiss the action when another action is pending in state court between the same parties and presents the same issues of state law. *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit whe[n] another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). *Brillhart* and its progeny set out three factors for courts to consider when determining whether to exercise jurisdiction over a declaratory-judgment action initially: (1) avoiding needless determinations of state-law issues, (2) discouraging litigants from filing

declaratory actions as a means of forum shopping, and

(3) avoiding duplicative litigation. *See, e.g., Nationwide Ins. Co. of Am. v. Marquez,* No. 2:16-cv-01978-W, 2016 WL 7104240, at *5 (E.D. Cal. Dec. 5. 2016)(enumerating *Brillhart* factors).

**II. Analysis**

As noted, Plaintiff asserts *Brillhart* does not apply in this instance because the Colorado state-court action was removed to federal court, and, therefore, there is no longer any state-court action. Although the Ninth Circuit has not addressed this issue specifically, other courts have concluded *Brillhart* is inapplicable when there is not any parallel state-court proceeding and it may be an abuse of the district court's discretion to dismiss a declaratory judgment action under those circumstances. *See, e.g., Federal Reserve Bank of Atlanta v. Thomas,* 220 F.3d 1235, 1247 (11th Cir. 2000)("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues. It is an abuse of discretion, however, to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist."); *Marquez,* 2016 WL 7104240, at *5 ("[M]y non-exhaustive search of precedent in the Ninth Circuit did not find any case on point. But courts in other jurisdictions have concluded that the *Brillhart* abstention doctrine is inapplicable where, as here, there is no parallel

15 - OPINION AND ORDER

state court proceeding."); *Zurich Am. Ins. Co. v. Philpot*, No. 2:16-cv-01978-W, 2009 WL 10671921, at *5 (S.D. Cal. Sept. 4, 2009)("There is no parallel state proceeding pending in this case. Thus, the Court does not risk the '[g]ratuitous interference with the orderly and comprehensive disposition of . . . state court litigation' by maintaining jurisdiction over the action. *Brillhart*, 316 U.S. at 495. Therefore, the *Brillhart* factors are inapplicable."); *Am. Cas. Co. of Reading, Pa. v. Sanders Hyland Corp.*, No. CA 06- 0813-C, 2007 WL 841743, at *6 (S.D. Ala. Mar. 16, 2007)("While the Supreme Court has not delineated the outer boundaries of the discretion of a district court regarding the *Brillhart* abstention doctrine, it is clear from case law in this circuit and elsewhere that whe[n] there are no parallel state proceedings, as in the instant case, the *Brillhart* abstention doctrine is inapplicable and it is an abuse of discretion to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist.").

Here, as noted, there is no longer any parallel state-court proceeding. Instead Elcon's third-party Colorado state-court complaint was removed to federal court. Although two district courts in California have in the past applied the *Brillhart* doctrine in cases in which there were parallel federal actions, those courts have more recently declined to do so. For example, in *Golden State Orthopaedics, Inc. v. Howmedica Osteonics*

16 - OPINION AND ORDER

*Corporation* the court noted:

> While some district courts have applied the *Brillhart* doctrine in cases with two parallel federal actions, *see, e.g., Schmitt v. JD Edwards World Solutions Co.*, 2001 WL 590039 (N.D. Cal. 2001), *Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999), several of the justifications for *Brillhart* abstention are absent when the parallel case is in federal rather than state court. If both cases are pending in federal court and there is no parallel state court case, there is no question of federal and state courts deciding the same issue unnecessarily, nor is there a risk of forum shopping by parties seeking to avoid state courts that would otherwise hear their claims.

No. C 14-3073 PJH, 2014 WL 12691050, at *6 (N.D. Cal. Oct. 31, 2014)(citation omitted). Similarly, in *Meras Engineering, Inc. v. CH2O, Inc.,* the court noted:

> This case is . . . outside the rule articulated in *Brillhart*. . . . [I]n this case, the parallel proceeding is in federal rather than state court. While some California district courts have applied the rule in *Brillhart* in cases with two parallel federal actions, *see Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F. Supp.2d 1177, 1179 (S.D. Cal. 1999); *Schmidtt v. JD Edwards World Solutions Co.*, 2001 WL 590039 (N.D. Cal. 2001), several of the justifications for *Brillhart* abstention are absent when the parallel case is in federal rather than state court. First, the *Brillhart* rule seeks to avoid federal courts ruling on questions of state law unnecessarily. Second, the rule discourages forum shopping by parties seeking to avoid state courts that would otherwise hear their claims. These two rationales are absent when both pending cases are in federal court.

No. C-11-0389 EMC, 2013 WL 146341, at *6 (N.D. Cal. Jan. 14, 2013)(citation omitted).

The Court finds the reasoning of *Golden State Orthopaedics*

17 - OPINION AND ORDER

and *Meras Engineering* to be persuasive and adopts it. Accordingly, the Court concludes the *Brillhart* doctrine does not apply when, as here, there are two parallel federal proceedings.

Although Elcon asserts the fact that the Colorado action has been removed to federal court does not negate the applicability of *Brillhart* because Plaintiff's removal of that action "was improvident and the Colorado action is likely to be remanded to state court," this Court declines to address or to decide whether the Colorado action was properly removed. That decision rests with the District Court of Colorado. This Court must determine only whether the *Brillhart* doctrine applies to this matter in its present procedural posture. Thus, the Court concludes the *Brillhart* doctrine does not apply because there is not currently a state-court action pending, and, therefore, dismissal of this action based on that doctrine would be an abuse of discretion.

Accordingly, the Court denies Elcon's Motion to Dismiss. The Court, however, acknowledges this matter could run afoul of the *Brillhart* doctrine if the Colorado action is remanded to the Colorado state court. The Court, therefore, grants Elcon leave to renew its Motion to Dismiss if the Colorado District Court remands the Colorado matter back to the Colorado state court.

**CONCLUSION**

18 - OPINION AND ORDER

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Request (#45) for Judicial Notice and **DENIES** Defendant Elcon Associates' Motion (#42) to Dismiss Pursuant to the Federal Declaratory Judgment Act. The Court, however, **GRANTS** Elcon leave to renew its Motion to Dismiss if the Colorado District Court remands the Colorado matter back to the Colorado state court.

IT IS SO ORDERED.

DATED this 29th day of May, 2018.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge